## OSBREY *vs.* REIMER and MECKE.

By an agreement between the parties, dated February 11, 1861, reciting that they had agreed to continue the connection between them for three years from January 1, 1861, in the same way as theretofore, it was stipulated that the arrangement made with the plaintiff was to share the profits or losses of the defendants' business in the above mentioned time, at the rate of $17\frac{1}{2}$ per cent; but that it was not to convey to the plaintiff the right of partnership in the defendants' firm, of signing the name of the firm, &c. and that he was to superintend as salesman the department of general dry goods; that the plaintiff should be at liberty to draw $2500 a year in monthly installments, for his personal and other expenses; that the capital then standing to his credit on the books of the firm, as well as the surplus of profits for the next three years, if any, should remain in the business, to his credit, at seven per cent interest during the term of the agreement; that in case of the death of either of the defendants, during the three years, the agreement was to remain in force with the surviving partner if he should continue the business; and that in case of the death of the plaintiff, the books of the firm might be balanced either on the 31st of December, or 30th of June, whichever date might follow

Osbrey *v.* Reimer.

after his death, and the balance found due to him should be paid to his representatives.

*Held,* 1. That whatever might be the character of the parties in respect to creditors or others, as between themselves they were not copartners.

2. That the provision in the agreement, that in case of the plaintiff's death, the books of the firm might be balanced either on the 31st of December, or 30th of June, excluded the idea that they should be balanced at any other time within the three years.

3. That as the accounting was not to be made until the expiration of that period, the profits and losses were to be calculated upon the whole, and not upon any fractional part of it—not upon every year, or month, or week within it; but that the gross profits and losses of the specified term of the contract were to constitute the elements of the accounting.

Accordingly *held* that the conclusion of the referee, "that the defendants had no right to charge the plaintiff interest on losses for the first year, nor to reduce the amount loaned them by the plaintiff, in consequence of such losses," was correct.

APPEAL by the defendants, from a judgment entered upon the report of a referee.

The action was for an accounting. The plaintiff claimed that the defendants had made a contract with him, whereby he had become a partner in their business from January 1, 1861, to January 1, 1864; that he had put in over $8000 as capital; and that he was to have 17½ per cent of the profits, and bear a like proportion of the losses. The dispute was in respect to the assets of the defendants on hand at the expiration of the contract. The plaintiff claimed that he was entitled to 17½ per cent of these assets. The defendants denied this, and claimed that he was only entitled to 17½ per cent of the actual profits made during the term of the contract, including, of course, debts due to the defendants at its expiration, but not collected until afterwards. The defendants also denied that there was any partnership whatever between the plaintiff and themselves.

On the trial before the referee, the plaintiff being examined as a witness in his own behalf, testified that he had a written proposition as to his connection with the defendants; witness being shown a paper, says: "It is signed in firm name; was handed to me by one of the defendants; I ac-

Osbrey *v.* Reimer.

cepted the proposition in writing." The paper was thereupon put in evidence, and was as follows :

"NEW YORK, February, 11, 1861.

Frederick L. Osbrey, Esq.—Present. Dear Sir : Having mutually agreed upon to continue the connection between yourself and ourselves for the next three years, viz. from January 1, 1861, to January 1, 1864, in the same way as heretofore, we beg to repeat to you, that the arrangement made with you is, that you are to share the profits or losses of our business in the above mentioned time at the rate of seventeen and one half per cent. It is, however, distinctly understood that this arrangement is not to convey to you the right of partnership in our firm, of signing the name of the firm, &c. and that you are to superintend as salesman, &c. as heretofore, the department of general dry goods of our business, and that you are, during the continuance of this agreement, to devote all your time and ability for the benefit of our business.

For personal and other expenses you are at liberty to draw from our firm $2500 per annum, in about equal monthly installments, and the capital at present standing to your credit on our books, as well as the surplus of profits for the next three years, if any, shall remain in our business, to your credit, at seven per cent interest, during the pending of this agreement.

In case of the death of either Frederick W. Reimer or John A. Mecke, during the time of this ageement, the same is to remain in force with the surviving partner, in case he should continue the business till its termination. In case of your death during the pending of this agreement, it is agreed that the books of our firm are to be balanced on either the 31st of December or 30th of June, which ever date may first follow your decease, and that whatever balance may be found due to you is to be paid to the executors or administrators

of your estate, within nine months of such balancing of the books of our firm.

All contracts of former dates of course expire by this agreement.

Hoping that our mutual intercourse and exertions during the pending of this agreement will be agreeable and profitable to all of us, we remain, expecting your confirmatory answer,          Dear Sir, yours very truly,

REIMER & MECKE."

At the close of the testimony, the referee found the following facts and conclusions of law, viz: On or before January 1st, 1861, the defendants were partners, doing business as merchants in the city of New York. On or before that day, the plaintiff and defendants entered into an agreement whereby the plaintiff agreed to work for the defendants for three years, from the 1st day of January, 1861, until the 1st day of January, 1864, on the following conditions, to wit: The defendants were to give the plaintiff, in consideration of his services, seventeen and a half per cent of the profits of their business for three years, during the pendency of the contract. The plaintiff was to let the defendants have the use of $8215.65, which sum they then owed him, at the rate of 7 per cent per annum. The plaintiff was to leave any profits found to be due him during the three years in the hands of defendants, and was to be paid seven per cent per annum for the use thereof. The plaintiff was to draw from the firm, in monthly installments, the sum of $2500 each year. The plaintiff was to share the profits and losses of the defendants' business to the amount of seventeen and a half per cent, during the three years the contract was to run. The parties entered upon the performance of the above contract. That the plaintiff did give his services to the defendants for the whole period thereof; did let them have the use of $8215.65, according to the agreement, and did leave his surplus profits with the defendants. He found the following to be a correct

statement of the accounts between the parties hereto, at the date of the report, and the profits of the three years. The net profit realized during the term of the contract, to wit, three years, amounted to the sum of $26,494.06, after deducting all the losses of the said business, exclusive of settlements made subsequent to the commencement of this action, and specified in a statement of accounts annexed to and made a part of the report. He found that of the outstanding debts uncollected, and which have been stated as suspended and considered as worthless by the defendants in their account, the plaintiff was entitled to seventeen and a half per cent thereof, as the same may be collected from time to time by the defendants, a list of which was annexed to and made a part of the report; and that the defendants have collected since the commencement of this suit the sum of $2443.03 of said debts, of which the plaintiff has been allowed his share thereof, as appeared by the statement of the accounts in the report.

Upon the foregoing facts, the referee arrived at the following conclusions of law:

1st. That the plaintiff and the defendants were not copartners in trade, under the said contract.

2d. That the plaintiff was not entitled to any part or share of the goods of the defendants left unsold at the termination of the said contract, or to the profits arising out of the sale of the same after the determination thereof.

3d. That the contract was an entire one, and the share which the plaintiff was to receive did not depend upon the profits and losses of a single year, but of the three years.

4th. That the defendants had no right to charge the plaintiff interest on losses for the first year, nor to reduce the amount loaned them by the plaintiff in consequence of such loss. That the plaintiff engaged for three years, and had a right to an accounting on the final result at the expiration of the three years; that the capital and labor of the plaintiff was not withdrawn or separated from the said business at the

expiration of the first year, but that the same remained in it, and helped to make out the final result.

5th. That there being no losses at the end of the contract, the plaintiff was entitled under it to be paid the $8215.65, with interest at seven per cent.

6th. That the plaintiff had a right to demand and receive the seventeen and a half per cent of the profits arising for the period of three years ; and that the defendants were liable to account to him on that basis.

7th. That the whole amount was due and payable at the end of the three years, to wit, the 1st day of January, in the year 1864, and that the plaintiff was entitled to interest from said day.

8th. That the plaintiff was entitled to be paid hereafter seventeen and a half per cent on the balance of the uncollected debts which had been stated as suspended by the defendants in their account, as the same may be collected from time to time by the defendants.

And that the plaintiff was entitled to judgment (after deducting all payments made by the defendants to him on account thereof.) for the sum of three thousand three hundred and forty dollars and forty-seven cents, and to a decree to carry this judgment into effect, with costs.

*Geo. C. Barrett,* for the appellants. I. The referee clearly erred in striking out the debits for interest upon losses and moneys drawn out. There was no evidence of any kind in the case upon which to base this finding. The only testimony in reference to the account and these items of interest, was that of Lang, and he testified to the direct opposite of the finding.

II. The charges for interest were evidently contemplated by the agreement. It was also the defendant's customary mode of keeping the accounts, as between themselves, and also as between themselves and the plaintiff ; and it is the universal custom of merchants. The plaintiff had been with the

defendant since 1855 upon similar arrangements, and the accounts had always been so kept and acted upon by all the parties, without objection or complaint by the plaintiff, but to his perfect satisfaction.

III. It is impossible to sever the items of interest from the rest of the account, and accept the remainder as the basis of any thing. The profit and losses, as stated in the account, are based and calculated upon these interest debits and credits, which are interwoven with the accounts. Strike out the interest, and the items of profits and losses are inaccurate, and the accounts must be remodeled upon another basis. Yet the referee, without asking the defendant to account upon the basis laid down by him, takes such items as are favorable to the plaintiff—inaccurate though they be upon this basis—from the rejected account, and renders his judgment thereon.

IV. The defendants are also debited in like manner with interest on the losses of the business, &c. Now, if the plaintiff is not debited, then the defendants should not be, and their profits are seemingly proportionately increased. But this is a delusion ; for a moment's reflection will make it perfectly clear that the net profits of all parties will come out precisely the same as though all parties had been charged with their proportion of interest. In fact, the result is inevitable, and cannot be changed by the allowance or disallowance of interest. But if the defendants are debited with interest on their share of the losses, and the plaintiff is exempted therefrom, it simply changes the latter's interest in the concern from about $17\frac{1}{2}$ per cent to about $25\frac{1}{2}$ per cent, and quietly reduces the defendants' interest to what remains. This is self-evident, and requires no further elucidation ; and it solves the whole problem of the accounts.

V. And look at it in still another aspect. The amount of profits stated in the account to have been earned in the year 1862, is partly estimated upon the interest on the losses of 1861. Strike out this interest, and charge the concern with interest on its full capital, as if this had not been materially

reduced by these losses, and it is apparent that the firm has earned very much less profits in 1862 than that specified in the account ; and so on in 1863. The profits specified, *and adopted by the referee,* become thus materially reduced, and are no criterion of the amount of the total net profits of the three years, treating the contract as entire, just as he does. These net profits of the entire three years would be reduced, upon the referee's basis, *to exactly such an amount* as would realize to the plaintiff (upon a calculation of 17½ per cent thereof) the precise amount brought out in the defendant's account as due to him.

*F. N. Bangs,* for the respondent. I. The expressions and implications of the agreement are all adverse to the defendants' position. The true construction of the agreement is, that in all particulars except the withdrawal of $2500 per year, and the constant rendition of services by the plaintiff, it was performable only at the expiration of three years. The case of death was specially provided for. 1. The relation was to be continued, not from year to year, but "for the next three years." It was a contract by which the defendants meant to secure three years' services from the plaintiff. 2. Therefore, if the plaintiff had rendered his services for a period less than three years, he could have recovered nothing except in case of his death, and except, perhaps, the $2500 per annum. (*Wolfe* v. *Howes,* 20 *N. Y. Rep.* 200. *Cunningham* v. *Jones, Id.* 486.) 3. If this is not clearly so upon the general words of the contract, then it is made clear by the provision authorizing the withdrawal of $2500 per annum. That makes a case for the application of the maxim "*expressio unius exclusio est alterius.*" The plain meaning of the agreement is, that nothing but the $2500 per annum should be drawn by the plaintiff within the three years. 4. This is made more apparent still by the provision that the plaintiff's share of profits should bear interest. That clause implies that he was to forbear all demand for

Osbrey *v.* Reimer.

the ascertained profits until the expiration of the three years. 5. There is no express provision that the plaintiff should pay a share of each particular loss as soon as ascertained ; and to insert such a provision by construction or implication would be to act in a spirit contrary to the one which plainly governed the parties when they provided for the disposition of expected profits. The agreement was mutual ; the defendants promised to pay so much of the profits as a whole, with interest on ascertained proportions of them, at the end of three years, in return for three years' services ; and the plaintiff promised to bear his share of the three years' losses as a whole.

II. The contemporaneous construction of the parties is in accordance with our view of the contract. The defendants do not pretend that they actually paid in their respective shares of the losses, nor that they paid interest on such shares.

III. If the agreement is susceptible of a construction different from what is above contended for, yet there is no proof that the accounts were ever so stated and adjusted as to bring the plaintiff in debt for any definite balance, nor that payment of any such balance was demanded. Until that was done, interest would not begin to accrue. (*Kane* v. *Smith*, 12 *John.* 156. *Walden* v. *Sherburne*, 15 *id.* 409. *Van Beuren* v. *Van Gaasbeck*, 4 *Cowen*, 496. *Rensselaer Glass Factory* v. *Reid*, 5 *id.* 587. *Tucker* v. *Ives*, 6 *id.* 193.)

The rule stated in *McMahon* v. *New York and Erie R. R. Co.*, (20 *N. Y. Rep.* 469,) and *Van Rensselaer* v. *Jewett*, (2 *Comst.* 135,) does not apply, because it does not appear that the plaintiff, at the end of 1861, was able to compute the amount of losses.

IV. If the parties were chargeable with interest on their respective shares of the losses of 1861, such interest would constitute one of the assets of the firm, and be divisible as a part of the profits of succeeding years. Suppose the parties, on December 31, 1863, had paid in the $11,511.88 of interest

VOL. XLIX. 18

which the defendants say had accrued on the losses of 1861, there would then have been so much more to divide, and the plaintiff's share of the dividend would have been equal to his share of the interest. The result is the same, if, instead of an actual payment in, and subsequent payment out, of the interest, the interest is merely made matter of account, and, as a matter of book-keeping, first charged and then divided to the parties respectively.

V. The allowance by the referee to the plaintiff of interest on the ascertained profits of 1862 was expressly authorized by the contract, and therefore was right.

CLERKE, J. The difference between the parties arises from the assertion of the defendants, that the profits or losses of each year are separable from those of each of the other years during which the agreement was to continue, and that, consequently, the losses of 1861 being ascertained at $82,227.75, the plaintiff was, on December 31, 1861, chargeable with, and became liable for, 17½ per cent of those losses, upon which interest was chargeable. The solution of this difficulty depends upon the question, whether by the agreement contained in the letter of the defendants, dated Februry 11, 1861, the parties became copartners in trade, or whether the plaintiff was employed as the salesman of the defendant, for the specified term of three years, as an unbroken period of service.

Whatever may be the character of the parties in relation to creditors or others, it is quite clear that in relation to each other, they were not copartners. The letter to which I have referred, distinctly provides that the arrangement thereby entered into, should not give to the plaintiff the right of partnership in the firm, or of signing the name of the firm, and that he was to superintend as salesman of the department of general dry goods for the period of three years; at the expiration of which time he was to receive, as a compensation for his services, 17½ per cent on the profits of the business, *within that time;* of course, after deducting all losses. The

Osbrey *v.* Reimer.

words are, " to share the profits and losses of our business in the above mentioned time, at the rate of 17½ per cent." This calculation, in order to ascertain the amount of the plaintiff's compensation, was not to be made at any fractional portions of the three years, every year, every month, or every week, but at the expiration of the whole term. Otherwise, certainly, the agreement would have provided for such an accounting. Instead of this, the letter provides that the plaintiff shall be at liberty to draw $2500 a year, in monthly installments, for his personal and other expenses, and, in case of his death, the books of the firm may be balanced either on the 31st of December, or 30th of June, whichever date may follow after his death. This, surely, excludes the idea that they should be advanced at any other time within the three years. If the accounting, then, was not to be made until the expiration of that period, the profits and losses were to be calculated upon the whole, and not upon any fractional part of it — not upon every year, or month, or week, within it; in a word, the gross profits and losses of the specified term of the contract were to constitute the elements of the accounting. If so, the conclusion of the referee is correct, " that the defendants had no right to charge the plaintiff interest on losses for the first year, nor to reduce the amount loaned them by the plaintiff, in consequence of such losses."

The judgment should be affirmed, with costs.

LEONARD, J. I concur. The report is according to the contract. The defendants refused to pay interest on the plaintiff's capital, and on his share of the annual profits. That is the principle adopted by the referee.

WELLES, J. also concurred.

Judgment affirmed.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Welles*, Justices.]